IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALAN MACPHERSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 10-210 |
| ) | Judge Arthur J. Schwab |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

### I. Introduction

Plaintiff, Alan MacPherson (hereinafter "Plaintiff"), brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) of the Social Security Act ("the Act"), seeking review of the final determination of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income ("SSI") and disability insurance benefits ("DIB"). Consistent with the customary practice in the Western District of Pennsylvania, the parties have submitted cross motions for summary judgment on the record developed at the administrative proceedings. After careful consideration of the Administrative Law Judge's ("ALJ") decision, the memoranda of the parties, and the entire record, the Court will grant the Commissioner's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment.

## II. Procedural History

Plaintiff filed an application for SSI and DIB on April 16, 2007, alleging disability beginning on April 8, 2007. R. at 12, 178. Plaintiff's claim was denied on August 23, 2007, and he thereafter requested a hearing. R. at 97-112, 114-15. The hearing was held on February 18, 2009, before ALJ Richard Gartner in Johnstown, Pennsylvania. R. at 46-87. Plaintiff, appearing with his attorney, testified at the hearing along with the vocational expert, Mitchell Schmidt. *Id.*

The ALJ issued a decision on March 26, 2009, finding that Plaintiff was not disabled. R. at 12-25. The ALJ found that Plaintiff was capable of performing light work with limitations. *Id.* The ALJ found that Plaintiff could perform jobs that exist in significant numbers in the national economy such as a folder, garment sorter, addresser and document preparer. *Id.* On December 29, 2009, the Appeals Council affirmed the ALJ's decision, thus making the ALJ's decision the final decision of the Commissioner. R. at 1-3. Plaintiff then filed his complaint herein seeking judicial review of the Commissioner's final decision.

## III. Statement of the Case

In the decision dated March 10, 2009, the ALJ made the following specific findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in "substantial gainful activity" since April 8, 2007, the alleged onset date (20 C.F.R. 404.1520 (b), 404.1571 *et seq*).

3. The claimant has the following severe impairments: seizure disorder with cognitive deficits, migraine headaches, osteoporosis, intermittent explosive disorder, bipolar disorder, and depressive disorder (20 C.F.R. 404.1521 *et seq.* and 416.921 *et esq.*).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals any of the criteria in Listings 1.00, 11.00, and 12.00 or any other

listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R.404.1525, 404.1526, 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except is limited to occasional postural maneuvers such as stooping, kneeling, crouching, and crawling, must avoid repetitive motions of the neck such as rotations, must avoid balancing and climbing, must avoid concentrated exposure to excessive noise, direct sunlight, and bright flashing lights, is limited to occupations which do not require exposure to dangerous machinery and unprotected heights, is limited to environment involving only simple work-related decisions, and in general, relatively few work place changes, and is limited to occasional interaction with supervisors, coworkers, and members of the general public.

6. The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

7. The claimant was born on June 6, 1961, and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disable," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569a, 416.969, ans 416.969a).

11. The claimant has not been under a disability as defined in the Social Security Act, from April 8, 2007, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

R. at 14-25.

## IV. Standards of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g)[1] and 1383(c)(3)[2]. Section 405(g) permits a district court to review transcripts and records upon which a determination of the Commissioner is based. Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits, or "DIB"), and judicial review thereof, are virtually identical to the standards under Title XVI (42 U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a). *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n. 1 (3d Cir.2002).

<u>Substantial Evidence</u>

When reviewing a decision denying SSI and DIB, the district court's role is limited to determining whether substantial evidence exists in the records to support the ALJ's findings of fact. *Burns, supra*. If supported by substantial evidence, the Commissioner's factual findings must be

---

[1]Section 405(g) provides in pertinent part:
Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action ... brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business ...
42 U.S.C. § 405(g).

[2]Section 1383(c)(3) provides in pertinent part:
The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.
42 U.S.C. § 1383(c)(3).

accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir.1995); *Wallace v. Secretary of HHS*, 722 F.2d 1150, 1152 (3d Cir.1983). The district court's function is to determine whether the record, as a whole, contains substantial evidence to support the Commissioner's findings. *See Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citation omitted). *See Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir.2005); *Ventura*, 55 F.3d at 901 (quoting *Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir.1988).

The Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns*, 312 F.3d at 118, quoting *Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir.1995). "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir.1993), quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983). The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner. *See Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder. *Rutherford*, 399 F.3d at 552. In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record

by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini*, 247 F.3d 34, 44 n. 7 (3d Cir.2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp.*, 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.'" Id. at 87; parallel and other citations omitted).

Five Step Determination Process

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period." *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir.1987); 42 U.S.C. § 423(d)(1) (1982). Similarly, to qualify for SSI, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525. The Court of Appeals for the Third Circuit summarized this five-step process in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir.1999):

> In *step one*, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied.... In *step two*, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520©. If the claimant fails to show that her impairments are "severe", she is ineligible for disability benefits.
>
> In *step three*, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five. *Step four* requires the ALJ to consider whether the claimant retains the residual functional capacity to perform her past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to her past relevant work....
>
> If the claimant is unable to resume her former occupation, the evaluation moves to the final *step [five]*. At this stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and residual functional capacity. The ALJ *must analyze the cumulative effect of all the claimant's impairments* in determining whether she is capable of performing work and is not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth step...

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted). *See also Rutherford*, 399 F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the residual functional capacity ("RFC") to return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant satisfies step 3, she is considered per se disabled. If the claimant instead satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1) by introducing medical evidence that the claimant is disabled *per se* because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is *equivalent* to a Listed Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy...." *Campbell*, 461 U.S. at 461 (citing 42 U.S.C. § 423(d)(2)(A)). In order to prove disability under this second method, plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4). *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777. Once it is shown that he or she is unable to resume his or her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir.2003); *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777.

## V. Discussion

Plaintiff raises four arguments as to why the ALJ's decision denying DIB and SSI lack the support of substantial evidence in the record. In particular, Plaintiff argues that the ALJ erred by improperly rejecting the opinions of Plaintiff's treating physicians. Plaintiff states that the ALJ failed to properly consider and analyze his severe impairments under the musculoskeletal and neurological Listings at step three. Next, Plaintiff argues that the ALJ failed to include all of

Plaintiff's mental limitations in the hypothetical question posed to the vocational expert ("VE"). Finally, Plaintiff states that the ALJ's credibility determination was erroneous as the ALJ did not properly consider all of the evidence in the record.

### 1. Rejection of Treating Physician Opinions

Plaintiff states that the ALJ improperly rejected all of Plaintiff's treating physicians findings without finding contrary medical evidence or pointing to any contradictory findings. The ALJ can only reject a treating physician's opinion on the basis of contradictory medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir.2000). "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d Cir.1987)) .... " *Morales*, 225 F.3d at 317 (additional citations omitted). The ALJ must weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional citations omitted). The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

Plaintiff does not specify which treating physicians specifically that the ALJ improperly rejected, however, in reviewing the record, the Court finds that the ALJ properly considered the

opinions of the treating physicians and explained the rejections to have a proper basis in the medical records.

With respect to Plaintiff's treating physician, Dr. Santarlas, the ALJ explained his rejection as follows:

> First, Dr. Santarlas did not provide any clinical or objective findings to support his opinion. On the contrary, as discussed above, the clinical and objective findings are inconsistent with an individual who experiences debilitating symptoms. Second, the opinion is inconsistent with the totality of the evidence. The claimant has not experienced a seizure since August 2007 and treatment notes show this impairment is well controlled with medication. The claimant also testified that his seizure disorder is controlled with medication. Finally, the claimant's medication regimen and history of treatment are inconsistent with an individual who experiences debilitating symptoms. Accordingly, this opinion that is inconsistent with other evidence in the record is not provided controlling weight. Moreover, the ultimate conclusion as to disability is an administrative determination reserved by the Commissioner involving considerations in addition to the purely medical findings or subjective complaints (SSR 96-5p).

R. at 23. As stated by the ALJ, the record illustrates medical evidence showing that Plaintiff's seizure disorder was under good control. R. at 390. Furthermore, in September of 2008, treating physician, Dr. Roberts-Atwater, noted that "[a]t this time he is able to function" although she recommend a neuro-psychiatric evaluation to determine long term functioning. R. at 426. Finally, although there were reports of short-term memory loss, in November of 2008, Plaintiff's mild cognitive deficits were noted as improving. R. at 449. As a result, there is substantial evidence in the record to support the ALJ's rejection of Dr. Santarlas's opinion as to Plaintiff's limitations and disability. R. at 401.

The ALJ also rejected the opinions of Dr. Gatumu and Cseh, Plaintiff's treating neuro-psychiatrist and psychiatrist. R. at 16. As with Dr. Santarlas, the ALJ found there other clinical and objective findings in the record that contradicted Dr. Gatumu and Cseh's findings of severe mental impairments with a GAF score of 50[3]. Specifically, the ALJ noted that Plaintiff did not have reported difficulties with getting along with people and that Dr. Cseh and Dr. Gatumu both noted that Plaintiff had less anger outbursts and that his mood had improved. R. at 16-17, 370, 378, 458.

As a result, the ALJ has provided a sufficient explanation based on contradictory medical evidence found in the record to afford less than controlling weight to the opinions of Plaintiff's treating physicians. Since substantial evidence supports the ALJ's rejection of said opinion, the ALJ's decision must be affirmed.

2. *ALJ's Step Three Analysis*

Plaintiff's second argument is that the ALJ failed to analyze Plaintiff's impairments under Listing 1.02-Major dysfunction of a joint(s)(due to any cause), Listing 1.04-Disorders of the Spine, Listing 11.02- Epilepsy, and Listing 11.04- Central Nervous System Vascular Accident.

The ALJ specifically stated in the step three section that "[a]s discussed below, the medical evidence does not contain the objective signs, symptoms or findings, or the degree of functional limitations, necessary for the claimant's impairments, considered singly or in combination, to meet or equal the severity of any sub-section of the above-mentioned listings [1.00, 11.00 and 12.00] or

---

[3] The GAF scale, designed by the American Psychiatric Association, ranges from zero to one hundred and assesses a person's psychological, social and occupational function. *Diagnostic and Statistical Manual of Mental Disorders*, (DSM-IV-TR)(4th ed. 2000). A score between 41 and 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupation, or school functioning (e.g., no friends, unable to keep a job). *Id.* (emphasis in original).

any other section contained in Appendix 1." R. at 15. In the ALJ's RFC assessment section, he fully considered and addressed Plaintiff's seizure disorder and osteoporosis. R. at 18-23. Based upon the analysis of Plaintiff's seizure disorder and osteoporosis the ALJ was able to conclude that Plaintiff was limited to light work and that he must avoid postural maneuvers, bright lights and dangerous machinery. R. at 18. All of these limitations account for the effects on Plaintiff's functional capacity from his seizure disorder and osteoporosis. As a result, the ALJ clearly considered the effects of these disorders.

Commissioner cites *Fargnoli*, 247 F.3d at 40 n.4, for the proposition that the ALJ need only provide enough discussion for the Court to engage in meaningful judicial review. Here, the ALJ clearly stated that the evidence did not support the finding that Plaintiff met any of the subsections of Listing 1.00 and 11.00 based upon the analysis of the medical evidence. Furthermore, the ALJ clearly indicated that he fully considered Plaintiff's seizure disorder and osteoporosis. There is no requirement that the ALJ provide his discussion of medical evidence pertaining to step three in his decision, rather the ALJ needs to only to show that he considered the medical evidence and all of the relevant listings in his decision. Because the Court can engage in meaningful judicial review of the ALJ's step three analysis, and that the decision indicates that all the medical evidence was fully considered under all applicable Listings, substantial evidence supports the ALJ's step three findings.

### 3. *Mental Limitation in Hypothetical Question*

Plaintiff finds fault with the ALJ's hypothetical question to the VE because he did not account for Plaintiff's moderate deficiencies in concentration, persistence and pace. The hypothetical put forth to the VE must accurately set forth all of Plaintiff's impairments, both mental and physical. *Burns*, 312 F.3d at 123. Where a hypothetical question to the VE accurately sets forth

all of a claimant's significant impairments and restrictions in activities, physical and mental, as found by the ALJ or as uncontradicted on the medical record, the expert's response as to the existence of jobs in the national economy which the claimant is capable of performing may be considered substantial evidence in support of the ALJ's findings on claimant's RFC. *See Burns*, 312 F.3d at 123.

Here, Plaintiff is arguing that the ALJ failed to include all of Plaintiff's mental limitations. The relevant portion of ALJ's question to the VE included the following limitation:

> [L]imited to simple, routine, repetitive tasks not performed in a production or quota based environment involving only simple work related decisions and in general relatively few workplace changes; and limited to occasional interaction with supervisors, co-workers, and the general public.

R. at 82-83. This limitation accounts for Plaintiff's mental limitations found in Plaintiff's RFC assessment as stated by the ALJ. R. at 17. Because as discussed above, the ALJ did not err in giving less than full weight to Plaintiff's treating physicians, substantial evidence supports the ALJ's RFC assessment. To that end, the hypothetical question that accurately reflected Plaintiff's RFC was not erroneous and the ALJ's reliance on the VE's testimony is supported by substantial evidence.

4. *Plaintiff's Credibility*

Plaintiff states that the ALJ failed to properly consider Plaintiff's subjective complaints. Specifically, Plaintiff faults the ALJ for not following the two pronged analysis of SSR 96-7p that requires the ALJ to consider the reasonableness of the alleged pain. Plaintiff states that the ALJ failed to consider Plaintiff's limited daily activities, excessive sleep patterns, intensity of Plaintiff's complained of pain and the effectiveness of Plaintiff's mediation in making the assessment of Plaintiff's subjective complaints of pain.

13

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight. *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981); *Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971). That is, while "there must be objective medical evidence of some condition that could reasonably produce pain, *there need not be objective evidence of the pain itself.*" *Green v. Schweiker*, 749 F.2d 1066, 1070-71 (3d Cir.1984)(emphasis added), *quoted in Mason*, 994 F.2d at 1067. In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir.2000). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician; "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence 'by independently' reviewing and interpreting the laboratory reports ...." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir.1985). If a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain without contrary medical evidence. *Ferguson*, 765 F.2d at 37.

In the preceding section it has been discussed that the ALJ did clearly point to medical evidence that contradicted Plaintiff's treating physician's opinions. The ALJ stated the following in concluding that Plaintiff's subjective statements were less than fully credible:

> However, the clinical and objective findings are inconsistent with an individual experiencing totally debilitating symptomatology. As to claimant's seizure disorder and migraine headaches, he has not experienced a seizure since August 2007 and treatment notes show these imperilments are well controlled with medication. The claimant

14

also testified that his seizure disorder is controlled with medication. As to the claimant's osteoporosis, as discussed above, he complained of back pain and treatment notes show tenderness. However, treatment notes also show he has a full motor strength throughout and normal muscle tone and there is no indication in the record of stooped, round-shoulder posture caused by the gradual compression of weakened vertebrae a recognizable symptom of osteoporosis. As to the claimant's mental health impairments. He has not had a psychiatric hospitalization since allegedly becoming disabled and has never attended or been referred to a partial hospitalization program nor has he resided in a halfway house or in another highly supportive living arrangement. Also, in December 2008 he was assessed with GAF scores of 55-56. The Administrative Law Judge also notes the claimant has not had any contact with law enforcement personnel due to his intermittent explosive disorder.

R. at 21.

In weighing the Plaintiff's credibility, the ALJ did not ignore any of the record evidence as the record indicates that all of Plaintiff's testimony as well as the other evidence in the record was considered. Indeed, the ALJ explicitly referenced Plaintiff's sleep patterns, his frequent headaches and limited activities in making his credibility determination. R. at 20. Since the ALJ indicated that he considered all the record evidence and that contradictory medical evidence was pointed to, the ALJ's credibility determination of Plaintiff is supported by substantial evidence.

## VI. Conclusion

When considering the record as a whole, substantial evidence supports the ALJ's decision on non-disability, thus the final decision of the Commissioner must be affirmed. Plaintiff's motion for summary judgment will be denied, the Commissioner's motion for summary judgment will be granted.

An appropriate order will follow.

Arthur J. Schwab
United States District Judge

Dated: September 10, 2010
cc: All counsel of record.